**Hannah Bland**, OSB #252404
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Email: hbland@ojrc.info
Telephone: 503-944-2270
Facsimile: 971-328-3982

        Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PENDLETON DIVISION

| | |
|---|---|
| CARLOS TEXIDOR<br><br>        Plaintiff,<br><br>        v.<br><br>STATE OF OREGON; DAVID HEEHN, STEPHEN TROTT; NICHOLAS DERANLEAU; THERON RUMSEY; and CAMERON BAUER.<br><br>        Defendants. | Case No. 2:26-cv-00356<br><br>COMPLAINT<br><br>Civil Rights Action (42 U.S.C. § 1983); and State Tort Action (Negligence)<br><br>*JURY TRIAL DEMANDED* |

**INTRODUCTION**

1.      This is a civil rights action brought by Plaintiff, Carlos Texidor, pursuant to 42 U.S.C § 1983 and state tort law. Plaintiff alleges that defendants have subjected him to cruel and unusual punishment by failing to protect him from an inmate that was a known threat to Plaintiff's safety. Defendants allowed Mr. Rudy Contreras the opportunity to assault Plaintiff even though Defendants knew a court had ordered no contact between Mr. Contreras and Plaintiff, and Defendants knew of a prior assault on Plaintiff by Mr. Contreras. Plaintiff seeks damages for

COMPLAINT
Page 1 of 12

actions by Defendants which violated his protected constitutional rights pursuant to the Eighth Amendment under the United States Constitution and for violations of state law. As a result of Defendants disregarding a foreseeable risk of harm to Plaintiff, Mr. Texidor experienced unnecessary physical pain and suffering.

## JURISDICTION AND VENUE

2.      This court has jurisdiction over Plaintiff's claims for violation of federal constitutional rights, pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because the cause of action arises under 42 U.S.C. § 1983. This Court has Supplemental jurisdiction over Plaintiff's state law negligence claim under 28 U.S.C. § 1967(a).

3.      The actions alleged herein occurred in Umatilla, Umatilla County, Oregon. Venue is properly before this District of Oregon pursuant to 28 U.S.C. § 1391(b) where all of the events giving rise to these claims occurred in this judicial district and because defendants are subject to personal jurisdiction in the District Court of Oregon.

## PARTIES

4.      Plaintiff Carlos Texidor is a citizen of the State of Oregon, residing in Marion County, Oregon. At all times relevant to this complaint, he was housed at Two Rivers Correctional Institution (TRCI) in the custody of Oregon Department of Corrections.

5.      Defendant State of Oregon is a sovereign state in the United States of America with the capacity to sue and be sued under the Oregon Tort Claims Act. The Oregon Department of Corrections (ODOC) is a subdivision of the State of Oregon. Under *respondeat superior*, Defendant State of Oregon is liable in a state tort action for the actions or inactions of its agents.

6. Defendant David Heehn is a Captain at TRCI. At the time of the allegations made herein, Defendant Heehn was a Captain at TRCI. He is an employee of the State of Oregon and ODOC. He was personally involved in the violations alleged herein. He is sued in his individual capacity.

7. Defendant Stephen Trott is a Captain at TRCI. At the time of the allegations made herein, Defendant Trott was a Captain at TRCI. He is an employee of the State of Oregon and ODOC. He was personally involved in the violations alleged herein. He is sued in his individual capacity.

8. Defendant Nicholas Deranleau is a Lieutenant at TRCI. At the time of the allegations made herein, Defendant Deranleau was a Lieutenant at TRCI. He is an employee of the State of Oregon and ODOC. He was personally involved in the violations alleged herein. He is sued in his individual capacity.

9. Defendant Theron Rumsey was a Captain at TRCI. At the time of the allegations made herein, Defendant Rumsey was a Captain and was the Assistant Superintendent of Security at TRCI. He was an employee of the State of Oregon and ODOC. He was personally involved in the violations alleged herein. He is sued in his individual capacity.

10. Defendant Cameron Bauer is a Lieutenant with ODOC's Office of Inspector General. At the time of the allegations made herein, Defendant Bauer was the Security Threat Management Lieutenant at TRCI. He is an employee of the State of Oregon and ODOC. He was personally involved in the violations alleged herein. He is sued in his individual capacity.

**FACTUAL ALLEGATIONS**

11. On December 6, 2015, Plaintiff Carlos Texidor was the victim of a robbery committed by Rudy Contreras. Based on these events, Mr. Contreras was indicted in 15CR56209 on one count of Robbery in the First Degree, one count of Unlawful Use of a Weapon, and one count of Theft

in the First Degree. During the jury trial, Plaintiff testified against Mr. Contreras. The jury convicted Mr. Contreras of Theft in the First Degree.

12.     Mr. Contreras' Judgment on the Theft conviction included the following: "Special Conditions: No Contact – Victim(s), [. . .] Do not have contact with the victim, Carlos Texi[d]or."

13.     Based on the Judgment in 15CR56209, Mr. Contreras was committed to the custody of the Oregon Department of Corrections.

14.     Staff from the Offender Information and Sentence Computation (OISC) unit reviewed Mr. Contreras' Judgment in 15CR56209, as required by OAR 291-100-0027(1). OISC is a unit within the Oregon Department of Corrections.

15.     Plaintiff Texidor entered ODOC custody on July 2, 2020. Following intake, Plaintiff was housed at Two Rivers Correctional Institution (TRCI) in Unit 6.

16.     Mr. Contreras was also housed at TRCI.

17.     On January 20, 2021, Plaintiff was assaulted by an associate of Mr. Contreras. Following this assault, Plaintiff was moved to the Disciplinary Segregation Unit (DSU). Plaintiff spent one week in DSU and was then placed back into Unit 6.

18.     Less than 24 hours after being transferred back into Unit 6, Plaintiff was once again assaulted by an associate of Mr. Contreras. He was placed back into DSU on January 28, 2021.

19.     While in DSU this second time, Plaintiff spoke with Defendant Heehn and explained that because he testified at trial in Mr. Contreras' 2015 Robbery case, Mr. Contreras posed a threat to him. During that conversation, Defendant Heehn accessed an ODOC computer, noted the "keep separate" / "no contact" order, and told Plaintiff, "I see that you testified against Contreras."

20. During that conversation with Defendant Heehn, Plaintiff asked to be transferred out of TRCI for his safety. Defendant Heehn told Plaintiff that he would not be transferred to a different facility.

21. Instead, Plaintiff was moved to Unit 8 within TRCI. Although Plaintiff and Mr. Contreras were not placed in the same housing unit, Mr. Contreras still had access to Plaintiff by being at the same facility.

22. Plaintiff sent an Inmate Communication Form ("kyte") to Defendant Bauer, the Security Threat Management Lieutenant at TRCI. In this kyte, Plaintiff explained his concerns about his safety being at the same facility as Mr. Contreras. Plaintiff explained the history with Mr. Contreras including the 2015 Robbery and the no contact order.

23. An ODOC Unusual Incident Report shows that on June 18, 2021, Mr. Contreras unilaterally assaulted Plaintiff Texidor in the corridor at TRCI. On that day, Mr. Contreras was standing with a group in the corridor when Mr. Contreras began swinging at Plaintiff. Plaintiff attempted to de-escalate the situation verbally. The two stepped away from the group and Plaintiff tried to talk Mr. Contreras down. However, Mr. Contreras began swinging again and TRCI staff intervened by deploying OC spray on both Plaintiff and Mr. Contreras.

24. In March 2022, Plaintiff was finally transferred out of TRCI, only to be transferred back to TRCI on May 17, 2023.

25. When Plaintiff arrived back at TRCI, he was "celled in" for the first 30 days at the facility.

26. Plaintiff sent a kyte to Defendant Trott wanting to talk about his concerns being back at TRCI. In response to his kyte, Defendants Trott and Deranleau came to Plaintiff's cell to talk.

27. During that conversation, Plaintiff explained his concerns with being at the same facility as Mr. Contreras. Plaintiff told them, "I'm just trying to stay out of trouble." Defendant Trott asked why Plaintiff was raising these concerns now when he had been at TRCI in the past and "nothing happened then." Plaintiff explained that the last time he was at TRCI, something did in fact happen; he was assaulted by Mr. Contreras. In response to Plaintiff's request to be moved out of TRCI, Defendants Trott and Deranleau told Plaintiff they would not move him, but he should let them know if anything happens.

28. Within a few days of this conversation with Defendants Trott and Deranleau, Plaintiff was once again assaulted; this time, he was assaulted inside his cell. On May 25, 2023, around 10:00PM, Plaintiff was asleep in his cell when TRCI staff opened all the cell doors on his tier to close the dayroom for the night. Once the doors opened, an associate of Mr. Contreras entered Plaintiff's cell and began attacking him.

29. Following this attack, Plaintiff sent a kyte to Defendants Trott and Deranleau letting them know that something did in fact happen. They responded that Plaintiff could fill out a conflict form.

30. In May 2023, Plaintiff submitted a CD1473 AIC Conflict Report to request that himself and Mr. Contreras be kept apart given the prior history of the 2015 Robbery, the no contact order, and Mr. Contreras assaulting him while in ODOC custody.

31. Defendant Rumsey, the Assistant Superintendent of Security at TRCI, denied the conflict request form saying the conflict was "not substantiated."

32. Plaintiff sent a kyte to Lieutenant Lee LeGore expressing concern for his safety. Lieutenant LeGore facilitated a teleconference meeting with Defendant Bauer. During that meeting, Plaintiff once again explained to Defendant Bauer his ongoing concern with being

housed at the same facility as Mr. Contreras. Plaintiff was reassigned from housing unit 9 to unit 8. Plaintiff reiterated that Mr. Contreras still had the opportunity to assault him while they are housed at the same facility; Plaintiff asked Defendant Bauer to be moved out of TRCI. Defendant Bauer said, "I can probably make that happen."

33.    The transfer out of TRCI never happened.

34.    Plaintiff followed up with Defendant Bauer in person, but still no progress was made.

35.    All in all, in the time leading up to March 1, 2024, Mr. Contreras had robbed Plaintiff at gunpoint, was ordered by a court to have no contact with Plaintiff, and had personally assaulted Plaintiff while they were housed in the same ODOC facility. Plaintiff, on the other hand, had asked for help from ODOC staff, submitted the proper paperwork to separate himself and Mr. Contreras, and had repeatedly followed up with ODOC staff to advocate for his safety. Despite this, on March 1, 2024, Plaintiff and Mr. Contreras were still housed together at TRCI.

36.    On March 1, 2024, Mr. Contreras and another AIC were waiting in Corridor 5 by the entrance of the Chapel. Plaintiff was walking down the hallway when Mr. Contreras and the other AIC advanced toward him. He continued walking between the two AICs. As he passed, Mr. Contreras said to him, "Are you ready for this speeding ticket?" Confused, Plaintiff turned around and paused to see if anything was going to happen. The two AICs rushed and flanked him. As they approached Plaintiff, Mr. Contreras seemed to reach into his jean pocket and hold something in his hand. The two AICs then began throwing punches and kicks at Plaintiff.

37.    In an effort to break up the fight, security staff deployed OC spray on all three and Plaintiff Texidor was brought to the ground. After Plaintiff was face-down on the ground, Corporal Keli Miller sprayed him with OC Spray directly in the face at point blank range.

38. During a review of security footage, ODOC staff determined that Plaintiff did not fight back when Mr. Contreras and the other AIC unilaterally assaulted him on March 1, 2024.

39. Following the assault, medical staff noted scratches and bruises on Plaintiff.

40. Photos taken approximately half an hour after the assault show redness and lacerations on Plaintiff's face, ears, neck, and arms. Photos also show swelling on the right side of his face.

41. Plaintiff Texidor had to see Medical 6 times in 24 hours to test for a concussion and was told not to go to sleep. His face was swollen to the size of a basketball, which took approximately two weeks to subside. He felt difficulty concentrating, suffered brain fog, and experienced cognitive delays. This assault also aggravated a prior injury to his lower back.

42. This event amplified his PTSD. Following the assault, he experienced anxiety, feeling on edge, like he always needed to expect that another assault was around the corner.

43. Plaintiff Texidor submitted a tort claim notice within the time proscribed by ORS 30.275.

## CLAIMS FOR RELIEF

### Claim 1
### Eighth Amendment of the U.S. Constitution—Failure to Protect
### 42 U.S.C. § 1983—Individual Liability

44. Plaintiff realleges paragraphs 1 through 43.

45. All individual Defendants are persons within the meaning of 42 U.S.C. § 1983.

46. The Eighth Amendment of the United States Constitution protects prisoners from being subjected to cruel and unusual punishments. One type of "cruel and unusual punishment" is when a prison official fails to protect a prisoner from a substantial risk of serious harm. This duty includes a duty to protect prisoners from violence at the hands of other prisoners.

47. The March 1, 2024, assault by Mr. Contreras on Plaintiff Texidor is an objectively serious harm that is contrary to current standards of decency.

48. Defendant Heehn was subjectively aware of the substantial risk posed to Plaintiff when Plaintiff reported the concern to him and he reviewed the no contact order.

49. Defendant Heehn was deliberately indifferent to the substantial risk of serious harm to Plaintiff when Defendant Heehn failed to ensure that Plaintiff and Mr. Contreras had no contact with each other.

50. Defendant Deranleau was subjectively aware of the substantial risk posed to Plaintiff when Plaintiff reported his concerns to Defendant Deranleau and explained that Mr. Contreras had assaulted him in the past.

51. Defendant Deranleau was deliberately indifferent to the substantial risk of serious harm to Plaintiff when Defendant Deranleau failed to ensure that Plaintiff and Mr. Contreras had no contact with each other. Defendant Deranleau's deliberate indifference is further demonstrated by his comment that Plaintiff should let him know if anything happens without doing anything to prevent an assault.

52. Defendant Trott was subjectively aware of the substantial risk posed to Plaintiff when Plaintiff reported his concerns to Defendant Trott and explained that Mr. Contreras had assaulted him in the past.

53. Defendant Trott was deliberately indifferent to the substantial risk of serious harm to Plaintiff when Defendant Trott failed to ensure that Plaintiff and Mr. Contreras had no contact with each other. Defendant Trott's deliberate indifference is further demonstrated by his comment that Plaintiff should let him know if anything happens without doing anything to prevent an assault.

54. Defendant Rumsey was subjectively aware of the substantial risk posed to Plaintiff when Plaintiff sent him communications regarding his fear of Mr. Contreras and the circumstances demonstrating the fear for his safety.

55. Defendant Rumsey was deliberately indifferent to the substantial risk of serious harm to Plaintiff was Defendant Rumsey denied Plaintiff's AIC Conflict Report and refused to keep Plaintiff and Mr. Contreras separated.

56. Defendant Bauer was subjectively aware of the substantial risk posed to Plaintiff when Plaintiff communicated his fear of Mr. Contreras and the circumstances demonstrating the fear for his safety. These communications to Defendant Bauer were in writing, in person, and via teleconference.

57. Defendant Bauer was deliberately indifferent to the substantial risk of serious harm to Plaintiff when Defendant Bauer failed to keep Plaintiff and Mr. Contreras separated and failed to transfer Plaintiff out of TRCI.

58. As a result of the above-described conduct, Defendants inflicted cruel and unusual punishment on Plaintiff Texidor. Defendants' actions were the direct and proximate cause of bodily injury, pain, loss of liberty, and mental and emotional suffering. Plaintiff is entitled to all of his damages in an amount to be ascertained at trial.

**Claim 2**
**State Tort—Negligence**
**Against Oregon Department of Corrections**

59. Plaintiff realleges and incorporates here Paragraphs 1 to 58.

60. Defendant State of Oregon, acting by and through its employees and agents, was negligent in failing to exercise reasonable care to protect Plaintiff from Mr. Contreras when

Defendant State of Oregon knew, or should have known, that Mr. Contreras posed a threat to Plaintiff Texidor.

61.     As the corrections agency holding Plaintiff in custody, Oregon Department of Corrections had a special relationship with Plaintiff and owed him a heightened duty of care. This duty included protecting Plaintiff from foreseeable harms, including violence at the hands of another prisoner.

62.     Defendant State of Oregon's agents and employees knew or should have known that their acts or omissions would result in a foreseeable risk of harm and suffering to Plaintiff.

63.     Defendant State of Oregon's agents' and employees' conduct was unreasonable in light of the foreseeable risk of harm to Plaintiff.

64.     As a direct result of the actions and omissions of Defendant State of Oregon, Plaintiff experienced bodily injury, pain, suffering, and emotional distress arising from the March 1, 2024 assault.

65.     Notice as required by the Oregon Tort Claims Act was provided to Defendant State of Oregon within the statutorily proscribed time.

## DAMAGES

66.     Because of the above-stated violations of Plaintiff's Constitutional rights and violations of state law, Defendants did cause the Plaintiff injury. Accordingly, Mr. Texidor is entitled to compensatory damages, including economic and non-economic damages, in an amount to be determined by a jury, for suffering bodily injury, pain, and emotional distress.

67.     Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## RELIEF SOUGHT

WEREFORE Plaintiff prays for judgment as follows:

a. For judgment in favor of Mr. Texidor against Defendants for his economic and non-economic;

b. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

c. For such other relief as this court deems just and equitable.

DATE: February 23, 2026.

/s/ *Hannah Bland*
Hannah Bland, OSB #252404
Attorney for Plaintiff